## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TERESEA M. J.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-465-JED-CDL** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation.[1] For the reasons set forth below, the undersigned **recommends** that the district court **affirm** the Commissioner's decision.

### I.    Legal Standards

#### A.    Standard of Review

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756

---

[1]    On November 5, 2020, the action was reassigned from Magistrate Judge Frank H. McCarthy pursuant to General Order 20-37. (Doc. 24).

F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## B.    Five-Step Agency Process

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 1007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled.

At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. "This determination is governed by the Secretary's severity regulations, is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (internal citation omitted). A claimant who does not have a severe impairment is not disabled.

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other

evidence." 20 C.F.R. § 404.1520(e).[2] Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing SSR 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## II.    Procedural History

Plaintiff applied for disability benefits on August 23, 2016, alleging a disability onset date of March 31, 2016. (R. 17). Plaintiff alleged disability due to a hip replacement and memory issues. (R. 200). Before her alleged disability, Plaintiff worked as an administrative unit clerk and switchboard clerk for the State of Oklahoma and as a cashier at a casino and a racetrack. (R. 45, 201).

---

[2]    A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see Williams*, 844 F.2d at 751. The RFC assessment is made "based on all of the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 404.1545(a)(3). When a claimant has multiple impairments, the Commissioner "consider[s] all of [a claimant's] medically determinable impairments of which [the Commissioner is] aware." 20 C.F.R. § 404.1545(a)(2).

Plaintiff's claim was denied initially and on reconsideration. Administrative Law Judge (ALJ) B.D. Crutchfield held a hearing on December 4, 2018, at which Plaintiff was represented by counsel. (R. 34). A vocational expert (VE) also testified at the hearing. *Id.* The ALJ denied benefits in a decision dated December 24, 2018. (R. 17-26). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on June 18, 2019. (R. 1-8). As a result, the ALJ's decision became the final decision of the Commissioner. (R. 1). Plaintiff then timely appealed to the district court.

## III.   The ALJ's Decision

### A. Step One

At step one, the ALJ found that Plaintiff is insured through March 31, 2021 and that she has not engaged in substantial gainful activity since her alleged disability onset date of March 31, 2016. (R. 19).

### B. Step Two

At step two, the ALJ found that Plaintiff suffers from the severe impairments of "status post left hip replacement" and major depressive disorder. *Id.*[3] The ALJ found the

---

[3]    The record indicates that Plaintiff's hip replacement surgery in fact was in the right hip, not the left. However, this discrepancy does not constitute reversible error. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that a court reviewing an ALJ's decision under § 405(g) "should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

5

following non-severe impairments: memory issues, neck pain, back pain, hand pain, and body-mass index (BMI) over 30. (R. 19-20).[4]

### C. Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ stated that she gave special consideration to Listings relating to the musculoskeletal system (Listing 1.00 *et seq.*) and mental disorders (Listing 12.00 *et seq.*). (R. 20).[5]

The ALJ also considered Plaintiff's mental impairments using the "paragraph B" criteria. She found that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace. She found mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. (R. 20). She considered the statements in Plaintiff's Adult Function Report (R. 211-218) concerning Plaintiff's regular activities but found that those statements, along with the objective medical evidence in the record, do not show at least two marked limitations or one extreme limitation. (R. 21). Finally, the ALJ referenced the "paragraph C" criteria (for "serious and

---

[4]     This finding is not challenged or otherwise addressed in the parties' briefs. Plaintiff's medical records do not indicate that she has a BMI over 30, and Plaintiff confirmed at the hearing that she is not claiming obesity as an impairment. (R. 39).

[5]     The ALJ stated that she considered obesity using the criteria set out in SSR 02-1p (which was effective at the relevant time but has since been rescinded and replaced). The ALJ determined that "[t]he totality of the evidence does not show that the functional effects of obesity combined with [Plaintiff's] other impairments either meets or equals" a Listing. (R. 20). However, as noted *supra* note 4, the record does not support a finding of obesity.

persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not satisfied. *Id.*

### D.   Step Four

The ALJ found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except with additional limitations. The claimant is able to lift and/or carry, and push and/or pull, twenty pounds occasionally and ten pounds frequently. The claimant is able to stand and/or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, with normal breaks. The claimant has sufficient concentration and memory to perform simple, routine tasks, and some complex tasks.

(R. 21). In explaining the RFC determination, the ALJ discussed Plaintiff's hearing testimony, medical records, and medical opinion evidence in the record, as summarized in part below.

### i.   Hearing Testimony

The ALJ noted that Plaintiff is 64 inches tall and weighs approximately 130 pounds; is right-handed; lives alone; can drive but does not drive every day; and has three adult children and six grandchildren. (R. 22). Plaintiff's back was injured at work but did not require surgery. *Id.* Plaintiff complained of stiffness in her neck, which she massages to alleviate. *Id.* She takes medications that help with pain but reported problems remembering to take pills. *Id.* Plaintiff has pain in her right hip but "not so much" in the left hip. (Tr. 22, 52). She has occasional cramping in her right hand, but that has subsided since she retired. (Tr. 22). She can sit for only thirty minutes; stand for approximately one hour; and walk approximately one block. *Id.* She cannot do household chores because of her hands but has no trouble buttoning shirts. *Id.* The ALJ concluded at step four that Plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

### ii. Medical and Investigative Records

In March 2017, x-rays revealed an existing avulsion fracture in Plaintiff's left hip, degenerative spurs in the left hip joint, and no evidence of acute injury in the left hip. (*Id.*; R. 338-339).[6] They showed Plaintiff's right hip prosthesis has good alignment and no evidence of acute injury. *Id.* The x-rays also revealed a one-centimeter calcified uterine fibroid. *Id.*

In April 2017, investigators with the Cooperative Disability Investigations (CDI) Unit of the Commissioner's Office of Inspector General interviewed Plaintiff at her home. (R. 23, 416). They observed Plaintiff showing full use and normal range of motion in her extremities, including normal grip strength and "adequate and normal" fine and gross motor use of both hands. (R. 23). Plaintiff had a normal gait and was able to climb up and down steps without difficulty. *Id.* The investigators observed Plaintiff lift a package of twelve water bottles and place it on the ground with ease, as well as manually lift and lower the garage doors with ease. *Id.* Plaintiff sat throughout the interview and did not show signs of pain or discomfort. *Id.* She interacted appropriately with the agents and showed no difficulty communicating. *Id.*

---

[6]     The ALJ's decision mistakenly indicates that the records are from March 2016.

In May 2018, Plaintiff visited Indian Healthcare Resource Center to establish care. *Id.* Plaintiff reported that her right hip replacement in 2014 went very well, but that she still has some chronic pain, which ibuprofen helps to alleviate. *Id.* She had no obvious muscle weakness or instability and had a normal gait. *Id.* She exhibited tenderness to palpitation of the right lateral hip girdle. *Id.* She had a mildly flat affect but was alert, oriented, and appropriately groomed and dressed. *Id.* The ALJ found that the examination findings do not support the alleged severity of Plaintiff's complaints or contradict the RFC determination. *Id.*

In October 2018, x-rays showed scattered degenerative spurs, consistent with degenerative disc disease, throughout Plaintiff's cervical spine. *Id.* They showed no evidence of arthritis in the thoracic spine. X-rays of the lumber spine showed good alignment of the right hip prosthesis. *Id.* They also showed a one-centimeter calcified density fibroid in the right pelvis, narrowing of L4-L5 and L5-S1 disc interspaces with vacuum phenomenon and anterior spurs, and changes consistent with degenerative disc disease. *Id.* X-rays of Plaintiff's hands showed no evidence of arthritis in either hand. *Id.* The ALJ found that the x-ray examination results do not support Plaintiff's subjective complaints or any functional limitations inconsistent with the RFC determination. *Id.*

### iii. Medical Opinions

In August 2017, a reviewing physician with the Oklahoma Disability Determination Division opined based on Plaintiff's medical records that Plaintiff can perform an eroded range of light exertional work. (R. 24). The ALJ found this opinion consistent with the medical evidence of record and accorded it great weight. *Id.*

Susan Linde, Ph.D. saw Plaintiff for a psychological consultative examination in December 2016. *Id.* Plaintiff appeared moderately depressed and cried off and on during the examination, but Plaintiff made good eye contact and was friendly and cooperative. *Id.* Plaintiff's judgment was within normal limits, and she appeared to have some insight into the issues she addressed with Dr. Linde. *Id.* Dr. Linde administered the Montreal Cognitive Assessment (MCA), and Plaintiff's performance was impaired, scoring 15 out of 30 points. *Id.* However, Dr. Linde opined that Plaintiff's performance on the MCA was "suspect" and underestimated Plaintiff's true ability. (R. 24, 398). She noted that Plaintiff's performance deviated significantly from her statements regarding memory, verbal ability, and concentration. (R. 24). Based on her limited time with Plaintiff, Dr. Linde assessed Plaintiff with moderate major depressive disorder. *Id.* Dr. Linde opined that Plaintiff can perform some work-related mental activities, such as the ability to understand, communicate, and interact socially. *Id.* Dr. Linde stated that Plaintiff may have mild difficulty with concentration, memory, persisting with difficult tasks, and adapting to the demands of a work environment. *Id.* She opined that Plaintiff can carry out simple and complex instructions within a work environment but that her sleep problems and chronic pain may impact her stamina. *Id.* The ALJ gave considerable weight to Dr. Linde's opinion that Plaintiff can carry out simple and complex instructions within a work environment. *Id.* The ALJ limited Plaintiff's RFC to "some complex tasks, rather than a full array of complex tasks" in order to accommodate the stamina limitations noted by Dr. Linde. *Id.*

Nick Lee Carroll, D.O., saw Plaintiff for an internal medicine consultative examination in December 2016. *Id.* Plaintiff weighed 144 pounds and had blood pressure

of 150/80. *Id.* Dr. Carroll noted normal findings on examination of Plaintiff's head, eyes, ears, nose, and throat, as well as in her neck, chest, heart, and abdomen. *Id.* Plaintiff's grip strength was four out of five in both hands and great toe strength was five out of five bilaterally. (R. 24-25). Her thumb and finger opposition was normal, and she was able to effectively manipulate small objects and grasp tools. (R. 24-25). However, Dr. Carroll observed hypertrophic changes in the finger joints and arthritic nodules in the distal segments of Plaintiff's fingers. (R. 25). Test results for labral tears were positive in both hips. *Id.*[7] Her gait using a walker was stable but antalgic, and her gait without the walker was cut short due to pain. *Id.* Plaintiff exhibit no limp. Plaintiff had decreased range of motion in the back, neck, hips, knees, and shoulders, and tenderness in the lumbosacral spine. *Id.* Plaintiff presented as alert and oriented but had some difficulty with memory recall. *Id.* The ALJ gave some weight to Dr. Carroll's opinion but found that his examination findings were not consistent with objective testing findings.

Harold Zane DeLaughter, D.O. saw Plaintiff in October 2018 for an internal medical consultative examination. Plaintiff was measured at sixty-six inches tall and 132 pounds. *Id.* Plaintiff was alert, oriented, cooperative, and fully intelligible, exhibiting normal thought processes. *Id.* Dr. DeLaughter noted normal findings in Plaintiff's head, eyes, ears, nose, and throat, and in the chest, abdomen, extremities, and cardiovascular system. *Id.* Plaintiff's grip strength and great toe strength were five out of five bilaterally. *Id.* Her finger to thumb opposition was adequate and fine tactile manipulation of objects was normal. *Id.* Plaintiff

---

[7]     These tests include flexion, abduction, and external rotation of the hip joint (FABER) and flexion, adduction, and internal rotation (FADIR).

had a decreased range of motion in the hips and lumbosacral spine, but her straight leg raise was negative bilaterally in both the seated and supine positions. *Id.* She walked with a stable gait, at an appropriate speed, without the use of assistive devices. *Id.*

Dr. DeLaughter opined that Plaintiff can perform an eroded range of light exertional work, including limitations to sitting, standing, and walking for only ten minutes each at a time. *Id.* Within an eight-hour workday, Dr. DeLaughter opined that Plaintiff can sit for five hours and can stand and walk for one hour each, but that she must spend the remaining hour lying down. *Id.* He also imposed additional manipulative, postural, and environmental limitations. *Id.* The ALJ gave this opinion little weight because the degrees of limitation on standing, walking, and sitting, and on manipulative and postural requirements, were not consistent with Dr. DeLaughter's examination findings, the objective testing, and other examination findings. *Id.*

### iv.  Past Relevant Work

The ALJ determined that based on Plaintiff's RFC, she can perform past relevant work as actually and generally performed, including as a (1) unit office clerk: light, semi-skilled, SVP 4 (DOT 219.362-010); (2) switchboard operator: sedentary, semi-skilled, SVP 3 (DOT 235.662-022); (3) cashier II: light, unskilled, SVP 2 (DOT 311.472-010); and (4) cashier: light exertion as actually performed, sedentary exertion as listed; semi-skilled, SVP 4 (DOT 211.462-022). (R. 25-26). The ALJ thus found Plaintiff is not disabled at step four.

## IV.  Discussion

Plaintiff contends the ALJ applied incorrect legal standards in weighing medical opinions in the record. She argues that with proper analysis, a reasonable ALJ could have

12

found she is unable to perform light or sedentary work competitively. Plaintiff also contends the ALJ failed to consider all Plaintiff's mental and physical limitations and failed to meet the Commissioner's burden to show that she can perform her past relevant work. Plaintiff argues that if done properly, the analysis would have proceeded to the application of the Medical–Vocational Guidelines, 20 C.F.R., pt. 404, Subpt. P, App. 2 (1986) at step five and would have shown Plaintiff to be disabled based on her age, education, and previous work experience.[8] Plaintiff's specific arguments are addressed below.

### A.    Evaluation of Medical Opinions in the Record

Plaintiff contends the ALJ failed to properly assign weight to certain medical opinions in the record. An ALJ has a duty to consider each medical opinion in the record. 20 C.F.R. § 404.1527(d); *see Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014). The ALJ "must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants." *Id.* (citation and internal quotation marks omitted). Unless the record includes a treating source opinion entitled to controlling weight under 20 C.F.R. § 416.927(c), the ALJ must consider the following factors in deciding the weight to accord to a consultative medical opinion:

> (1) the length of the treating relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[8]    20 C.F.R. Pt. 404, Subpt. P. App. 2, 200(b).

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see also* 20 C.F.R. § 416.927.

### i.    Dr. Carroll

Plaintiff argues that the ALJ failed to identify which objective test findings are inconsistent with Dr. Carroll's statement. An ALJ must provide good reasons for the weight given to a medical source opinion after considering the appropriate factors. *Watkins*, 350 F.3d at 1300-01 (citing 20 C.F.R. § 416.927(d)(2)). The reasons must be specific enough to make clear to any subsequent reviewers the weight the ALJ assigned to the opinion and the reasons for that weight. *See id.* at 1300; *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (stating that the ALJ must give "specific, legitimate reasons" for rejecting an examining physician's opinion) (citing *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Anderson v. Astrue*, 319 F. App'x. 712, 717 (10th Cir. 2009) (unpublished).[9] Moreover, an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

Here, the ALJ gave some weight to Dr. Carroll's opinion based on his consultative examination of Plaintiff. The ALJ noted Dr. Carroll's findings of hypertrophic changes in the finger joints and arthritic nodules in her fingers. She also noted that Dr. Carroll observed some issues with Plaintiff's memory but that Plaintiff completed the evaluation adequately. The ALJ also noted Dr. Carroll's report of positive FADIR/FABRE testing in

---

[9]    Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

Plaintiff's hips; decreased range of motion in Plaintiff's back, neck, hips, knees, and shoulders; and that her gait was cut short when she walked without an assistive device. The ALJ concluded, however, that Dr. Carroll's findings were not consistent with objective testing findings.

This assessment and explanation are sufficient. Dr. Carroll's opinion did not prescribe any functional limitations. "[T]he mere presence of [a condition] is not necessarily disabling. Rather, [the condition], alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (citations, brackets and internal quotation marks omitted). The ALJ addressed specific parts of Dr. Carroll's opinion and determined they were inconsistent with the objective medical evidence. The ALJ's reasons for the weight accorded to Dr. Carroll's opinion were sufficient and were supported by substantial evidence in the record.

### ii.    Dr. DeLaughter

Dr. DeLaughter's medical source statement restricted Plaintiff to sitting, standing, or walking in ten-minute increments and required that Plaintiff be allowed to lie down for one hour during an eight-hour workday. (R. 25). The ALJ assigned these limitations little weight, explaining that "the degree of limitation on standing, walking and sitting, as well as the manipulative and postural limitations, are not consistent with Dr. DeLaughter's examination findings, the objective testing and the other examination findings as discussed herein." *Id.*

The ALJ summarized Dr. DeLaughter's examination findings in some detail in her

decision. The ALJ noted that Dr. DeLaughter found a decreased range of motion in the back and hips. *Id.* She noted his opinion that Plaintiff is limited to an "eroded range of light exertion work, with limitations to sitting, standing and walking for only ten minutes at one time, sitting for five hours in an eight-hour workday, and standing and walking for one hour each in an eight hour workday, spending the rest of the day laying down." *Id.* The ALJ rejected the functional limitations in DeLaughter's opinion because "the degree of limitation on standing, walking and sitting, as well as the manipulative and postural limitations, are not consistent with Dr. DeLaughter's examination findings, the objective testing and the other examination findings as discussed herein." (R. 25).

Plaintiff contends the ALJ failed to provide adequate reasons for rejecting the functional limitations. Consistency with the overall record is among the factors an ALJ should consider in determining the weight to give a medical opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the Commissioner] will give to that medical opinion."); *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (ALJ's "specific and legitimate reasons" for discounting limitations included that treating physician's "examinations of [the claimant] were limited and did not fully support her very restrictive functional assessment"). Here, as the ALJ noted, Dr. DeLaughter's examination findings included that Plaintiff had a normal gait without use of an assistive device, normal strength and sensation in her legs. (R. 25). His examination also showed normal extremities as well as normal findings in the chest, cardiovascular, and abdomen. *Id.* With respect to reaching, handling, fingering, feeling, pushing and pulling, Dr. DeLaughter found Plaintiff has

normal manipulative abilities and normal range of motion in her hands. *Id.* The severity of functional limitations offered in DeLaughter's opinion are inconsistent with these findings, as well as other substantial evidence discussed in the ALJ's decision. Accordingly, ALJ gave legitimate reasons for rejecting these limitations.

Plaintiff reported to Dr. DeLaughter that her hip pain is worse when she has to walk more than one block, and nothing improves it. (*See* R. 465). However, despite Plaintiff's reported complaints, Dr. DeLaughter's physical examination observed Plaintiff "ambulates with a stable gait at an appropriate speed without use of assistive devices." (R. 466). In addition, her straight leg raise was negative in both legs. *Id.* Accordingly, substantial evidence supports the ALJ's assessment of Dr. DeLaughter's opinion regarding standing and walking limitations.

Plaintiff notes the ALJ failed to state that Dr. DeLaughter assessed Plaintiff with depression and degenerative joint disease in both hips and raised a question of "pseudo-dementia" or memory loss. (R. 466). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays*, 739 F.3d at 576 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). However, the statements by Dr. DeLaughter do not constitute significantly probative evidence, and therefore the ALJ was not required to address them. *See* 20 CFR § 416.921 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We

17

will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

### iii.   Chronic Pain

Plaintiff contends the ALJ failed to properly consider Dr. Linde's assessment of chronic pain syndrome, including her observation that Plaintiff's sleep problems and chronic pain may affect her stamina. Dr. Linde's consultative examination report noted that Plaintiff had difficulty with ambulation and used a walker for support; Plaintiff appeared moderately depressed, crying on and off during the evaluation; and Plaintiff had poor immediate and delayed recall. (R. 394, 398-399; *see also* R. 24). However, Dr. Linde stated that she suspected Plaintiff's MCA test result was artificially low due to malingering. (R. 24, 398-399). Dr. Linde assessed Plaintiff with conditions including major depressive disorder; single-episode moderate unresolved grief; chronic pain; hip replacement; and insomnia. (R. 399-400).

In evaluating whether a claimant's alleged pain is disabling, an ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems," as well as "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Keyes-Zachary*, 695 F.3d at 1167 (citing *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (internal quotation marks omitted)).

The ALJ provided a substantial discussion of Dr. Linde's notes, including her comments regarding Plaintiff's chronic pain. While the ALJ did not address every

individual statement in Dr. Linde's report, she was not required to do so. *Keyes-Zachary*, 695 F.3d at 1167 ("As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ 'need not make a formalistic factor-by-factor recitation of the evidence.'") (internal citation omitted). The ALJ also discussed Plaintiff's treatment records, including May 2018 treatment notes from Heidi Dawson, PA-C relaying that Plaintiff reported chronic pain after her hip replacement (R. 24 (citing Ex. 9F); *see* R. 421). Ms. Dawson's notes also addressed Plaintiff's chronic pain following her right total hip arthroplasty and included treatment notes regarding the chronic pain assessment (R. 425).

In discussing these sources, the ALJ noted that their findings are consistent with the RFC determination, which restricted Plaintiff to light work and included limitations to accommodate Plaintiff's stamina, as assessed by Dr. Linde. (R. 24). The ALJ sufficiently explained her reasoning and the evidence on which she relied in the weight she gave to Dr. Linde's opinion. Plaintiff has not identified any significantly probative evidence concerning chronic pain the ALJ ignored or rejected without explanation. *Cf. Clifton*, 79 F.3d at 1009-10. Accordingly, the ALJ adequately weighed the record evidence concerning Plaintiff's chronic pain.

### iv.   Reviewing Physicians

Plaintiff also contends the ALJ erred in assigning greater weight to the opinion of reviewing physicians than to those of physicians who examined Plaintiff in this case. An examining source opinion is "presumptively entitled to more weight than a doctor's report derived from a review of the medical record." *Chapo*, 682 F.3d at 1291. Accordingly, an

19

ALJ must explain her reasons for rejecting an examining physician's opinion in favor of a reviewing physician's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (unpublished) (stating that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

Here, the ALJ explained that the reviewing physicians' opinions are consistent with the medical evidence of record, specifically citing testing records at Exhibits 3F (March 2017 x-rays) and 11F (October 2018 radiology report), as well as examination findings at Exhibit 9F (May 2018 treating source records from Indian Health Care Resource Center). In her review of the record, the ALJ summarized findings from each of these sources and reasonably explained the weight she gave them. In addition, as discussed *supra*, the ALJ gave legitimate reasons for rejecting aspects of the consulting examiners' opinions. Accordingly, the ALJ's consideration of the reviewing physicians' opinions was not erroneous.

**B.     Step Two**

Plaintiff argues that her hand, neck, and back pain—which the ALJ found to be non-severe impairments—are severe. An ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). This is so because an ALJ "is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process." *Williams*, 844 F.2d at 756 (citing 42 U.S.C. § 423(d)(2)(C)); *see also Allman*, 813 F.3d at 1330. Here, the ALJ found Plaintiff's status

following hip replacement and major depressive disorder to be severe impairments.[10] Consistent with the rule set forth in *Allman*, the ALJ's determination that other impairments were not severe is not reversible error. (R. 19-20).[11]

Plaintiff also argues that the ALJ's failure to find her insomnia, fatigue, chronic pain, and PTSD to be medically determinable impairments affected the outcome of her case, because the combined effect of all these impairments prevents Plaintiff from performing light or sedentary work competitively. *Id.* Plaintiff cites records of her complaints, diagnoses, and treatment of these conditions. (*See* Pl. Op. Br., Doc. 17 at 8-9). However, Plaintiff does not point to objective medical evidence in the record supporting impairments of insomnia, fatigue, chronic pain, or PTSD. Diagnosis and/or treatment of a condition alone do not establish a medically determinable impairment. Rather, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See* 20 CFR § 416.921; *Coleman*, 58 F.3d at 579. Accordingly, the failure to find Plaintiff's alleged insomnia, fatigue, chronic pain, and PTSD to be medically determinable impairments was not reversible error.

## C.    Step Four

Plaintiff argues that at step four, the ALJ failed to fully determine the physical and mental demands of Plaintiff's past relevant work. At step four, the ALJ must make specific

---

[10]    Of course, a plaintiff may argue that the ALJ failed to consider all impairments at any subsequent step. However, any such argument is properly addressed in the context of that particular step, rather than at step two.

[11]    For the reasons set forth *supra* note 4, the ALJ's finding of BMI over 30 is excluded for the purpose of this analysis.

findings on the record including "[a] finding of fact as to the physical and mental demands of the past job/occupation." SSR 82-62; *see Winfrey*, 92 F.3d at 1024 (holding that an ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations included in the RFC). In *Winfrey*, the Tenth Circuit found, among other errors, that "the ALJ did not relate his conclusions to the evidence, other than to state that they were based on 'a reasonable understanding of the medical records'"; "the ALJ's conclusions as to plaintiff's abilities differed dramatically from" those of a psychologist who had examined plaintiff multiple times; and that the ALJ improperly second-guessed a medical expert's judgment in rejecting the psychologist's opinion. 92 F.3d at 1022 (internal citation omitted).

Here, the record includes Plaintiff's Work History Report dated November 3, 2016, in which Plaintiff provided details about the demands of her past work as an administrative tech and cashier. (R. 219-225). The VE referred to this report, as well as to Plaintiff's Adult Disability Report dated October 17, 2016, in response to the ALJ's questions regarding Plaintiff's previous work. (*See* R. 59-60). The VE addressed Plaintiff's reported exertion levels in her previous work as a unit or office clerk; a switchboard operator; cashier level II; and cashier at a casino. *Id.* The VE also referenced Plaintiff's earlier testimony regarding how she performed her past work as a switchboard operator. (R. 59).

In her decision, the ALJ stated:

> In comparing [Plaintiff's] residual functional capacity with the physical and mental demands of [Plaintiff's past relevant] work, I find that [Plaintiff] is able to perform it as actually and generally performed. The vocational expert testified that the job duties as a unit office clerk, switchboard operator, cashier II and cashier could

22

> be performed within the above stated residual functional capacity, on a function-by-function basis, both as the claimant performed them and as normally performed in the national economy. The undersigned concurs with the testimony of the vocational expert and finds [Plaintiff] is able to perform past relevant work as actually and generally performed.

(R. 26). In the context of the ALJ's questioning of the VE at the hearing, this finding is sufficient to fulfill the ALJ's duty at phase two of step four. *Cf. Doyal*, 331 F.3d at 761 ("While the ALJ did not use the phrase 'I find' in connection with his conclusion, the form of words should not obscure the substance of what the ALJ actually did. The ALJ's findings were adequate here to satisfy the step-four requirements articulated in *Winfrey*.").

Plaintiff argues that the ALJ failed to inquire into the mental demands of her past relevant work, noting the Tenth Circuit's admonition that "[w]hen the claimant has a mental impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Winfrey*, 92 F.3d at 1024. However, the ALJ in fact provided a detailed summary of Dr. Linde's findings, explained the weight given to Dr. Linde's opinion, and included restrictions to Plaintiff's RFC in light of her limited stamina. (R. 24). The ALJ fulfilled her duty at step four with respect to the physical and mental demands of Plaintiff's past work.

### D.    The Medical-Vocational Guidelines

Plaintiff argues she is disabled under the Medical-Vocational Guidelines (grids) if she can only perform sedentary work or light work. When all factors coincide with the criteria of a grid rule, then the ALJ can rely on the rule to establish the existence of jobs at

step five of the evaluative sequence. 20 C.F.R. Pt. 404, Subpt. P. App'x 2, § 200.00(b). However, these rules apply only where a claimant cannot perform his or her past relevant work due to one or more severe impairments. *See id.* § 200.00(a). Because the ALJ properly determined at step four that Plaintiff can perform her past relevant work, the grids are inapplicable here.

### E.    Subjective Complaints

Plaintiff argues that the ALJ improperly discounted her subjective complaints. Plaintiff notes that the ALJ stated at the hearing that she "ha[s] to base her decision strictly on the medical records." (R. 58). Plaintiff correctly notes that this statement is inconsistent with the requirement under applicable regulations to consider a claimant's subjective complaints. However, the ALJ's decision indicates that she considered Plaintiff's subjective complaints, both in the Adult Function Report and in Plaintiff's hearing testimony. (R. 21, 22). In addition, the ALJ noted Plaintiff's complaints when she was treated at Indian Healthcare Resource Center in May 2018. (R. 23). Accordingly, despite the ALJ's inaccurate statement of the law at the conclusion of the hearing, the decision itself reflects that the ALJ properly considered and evaluated Plaintiff's subjective complaints.

### V.    Conclusion and Recommendation

The undersigned finds that the ALJ's decision is consistent with applicable legal standards and is supported by substantial evidence. Therefore, the undersigned **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **affirmed**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before January 19, 2021.[12]

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 4th day of January, 2021.

Christine D. Little
United States Magistrate Judge

---

[12]   January 18, 2021 is a federal holiday.