IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESEA M. J., | ) |
| | ) |
| Plaintiff, | ) Case No. 19-CV-0465-CVE-CDL |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the report and recommendation (R&R) (Dkt. # 25) of United States Magistrate Judge Christine D. Little on review of a decision of the Commissioner of the Social Security Administration (SSA) denying the plaintiff disability benefits. The magistrate judge recommends that the Court affirm the Commissioner's denial of plaintiff's application for benefits. Plaintiff filed a timely objection (Dkt. # 26) to the R&R, and she requests that the Court reject the R&R and remand for further administrative proceedings. The Commissioner filed a response to the objection (Dkt. # 27), arguing that the R&R should be accepted. Reviewing the objection de novo, the Court has considered the administrative record (Dkt. # 14), the parties' briefs, the R&R, and plaintiff's objection, and concludes that the R&R should be accepted, and the Commissioner's determination should be affirmed.

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

**I.**

Plaintiff was 61-years old when she applied for Title II disability insurance benefits on August 23, 2016, alleging disability as of March 31, 2016, due to a hip replacement and memory issues. Dkt. # 14, at 17, 200. The Commissioner denied plaintiff's application for benefits on May 11, 2017, and on reconsideration on August 21, 2017. Id. at 17. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), who conducted the hearing on December 4, 2018. Id. at 33-64. The ALJ issued a decision on December 24, 2018, denying benefits and finding plaintiff not disabled because she could perform her past relevant work. Id. at 17-26. The Appeals Council denied review, and plaintiff appealed. Id. at 1-3; Dkt. # 2.

**II.**

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. "It is 'more than a scintilla, but less than a preponderance.'" Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Martinez v. Barnhart, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which provides that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule when the plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777-78 (10th Cir. 2007).[2]

### III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his

---

[2] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

3

past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine whether the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## IV.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 31, 2016. Dkt. # 14, at 19. At step two, the ALJ found that plaintiff had the following severe impairments: status post left hip[3] replacement and major

---

[3] The record shows that plaintiff's hip replacement surgery occurred on her right hip, not her left. However, this mistake does not constitute reversible error, as a reviewing court need not "insist on technical perfection." Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

depressive disorder. Id. The ALJ further found the following non-severe impairments: memory issues, neck pain, back pain, hand pain, and body-mass index (BMI) over 30. Id. at 19-20.[4]

At step three, the ALJ found that plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Id. at 20. In assessing plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that plaintiff has a moderate limitation in the area of concentrating, persisting, or maintaining pace, and mild limitations in the areas of (1) interacting with others, (2) understanding, remembering, or applying information, and (3) adapting or managing oneself. Id.

After evaluating the objective and opinion evidence, and plaintiff's statements, the ALJ concluded that plaintiff has the RFC to perform a range of light work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as deffaed in 20 CFR 404.1567(b) except with additional limitations. The claimant is able to lift and/or carry, and push and/or pull, twenty pounds occasionally and ten pounds frequently. The claimant is able to stand and/or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, with normal breaks. The claimant has sufficient concentration and memory to perform simple, routine tasks, and some complex tasks[.]

Id. at 21. At step four, the ALJ found that plaintiff is capable of performing past relevant work as a (1) unit office clerk: light exertion, semi-skilled, SVP 4 (DOT 219.362-010); (2) switchboard operator: sedentary exertion, semi-skilled, SVP 3 (DOT235.662-022); (3) cashier II: light exertion, unskilled, SVP 2 (DOT 311.472-010); and (4) cashier: light exertion as actually performed, sedentary exertion as listed, semi-skilled, SVP 4 (DOT 211.462-022). Id. at 25-26. Accordingly, the ALJ found that plaintiff is not disabled at step four.

---

[4] Neither party discusses the ALJ's obesity finding, but, as the magistrate judge pointed out, plaintiff's medical records do not show that she has a BMI over 30. Further, plaintiff expressly stated at the hearing that she is not claiming obesity as an impairment. Dkt. # 14, at 39.

V.

Plaintiff raised five points of error in her opening brief before the magistrate judge: (1) the ALJ failed to apply the required legal standards to assign proper weight to the medical opinions in the record; (2) the ALJ failed to account for all of plaintiff's mental and physical limitations at step two of the sequential evaluation process; (3) the ALJ failed to perform a proper analysis of the physical and mental demands of claimant's past work at step four of the sequential evaluation; (4) the ALJ failed to determine that given her age, education, and previous work experience, claimant is disabled pursuant to the Medical-Vocational Guidelines ("the Grids"); and (5) the ALJ failed to examine the evidence pursuant to the Commissioner's regulations and the required legal standards. Dkt. # 17, at 2. Plaintiff's objection to the R&R reiterates these arguments. Dkt. # 18. The Court will address each in turn.

**A.   Evaluation of Medical Opinions in the Record**

Plaintiff first claims that the ALJ failed to properly evaluate the medical opinions of three doctors—Dr. Carrol, Dr. DeLaughter, and Dr. Linde—all of whom performed a consultative examination of plaintiff at the request of the SSA. To begin, "'[i]t is the ALJ's duty to give consideration to all medical opinions in the record. He must also discuss the weight he assigns to such opinions,' including the opinions of state agency medical consultants." Mays v. Colvin, 739 F.3d 569, 578 (10th Cir. 2014). When evaluating a medical opinion, the SSA will consider these factors: (1) whether the medical professional has an examining relationship with the claimant; (2) whether the medical professional has a treating relationship with the claimant; (3) the length, frequency, and nature and extent of the treating relationship; (4) supportability of the medical opinion; (5) the consistency of the medical opinion with the record as a whole; (6) whether the

medical opinion is from a specialist; and (7) other factors brought to the attention of the SSA. 20 C.F.R. § 404.1527(c)(1)-(6).

"[A]n examining medical-source opinion is, *as such*, given particular considerations: it is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." Chapo v. Astrue, 682 F.3d 1285, 1291 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c)(1)). "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of the factors set out in the cited regulation and the ALJ must 'provide specific, legitimate reasons for rejecting it.'" Id. (quoting Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003)). Moreover, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). With those principles in mind, the Court will now turn to the ALJ's treatment of Dr. Carrol's, Dr. DeLaughter's, and Dr. Linde's medical opinions.

### 1. Dr. Carrol

Dr. Carrol examined plaintiff in December 2016 and found that plaintiff had no muscle atrophy, her gait was stable with a walker but antalgic, there was no limp present, and she had reduced range of motion in her spine and extremities. Dkt. # 14, at 25. The ALJ gave Dr. Carroll's findings "some weight" but determined that "the findings on examination [were] not consistent with the objective test findings." Id. Plaintiff argues that the ALJ failed to identify which objective test findings conflict with Dr. Carroll's statement. However, the ALJ did discuss the series of x-rays that plaintiff underwent in October 2018, where the results of the "thoracic spin[e] were negative, with no evidence of arthritis," and the x-rays of plaintiff's right and left hand were negative with no signs of arthritis. Id. at 23. This appears to differ from Dr. Carrol's finding that

7

plaintiff had "arthritic nodules in the distal segments of her digits," id. at 25, and the cause of the ALJ's note on inconsistency.

But, more importantly, Dr. Carrol did not assign any functional limitations to plaintiff. Thus, "the ALJ was not required to consider Dr. [Carrol's] opinion in formulating [plaintiff's] RFC." Paulsen v. Colvin, 665 F. App'x 660, 666 (10th Cir. 2016). "[T]he mere presence of [a condition] is not necessarily disabling. Rather, [the condition], alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." Id. (alteration in original) (quoting Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)); see also Bales v. Colvin, 576 F. App'x 792, 797 (10th Cir. 2014) ("Ms. Bales fails to explain how Dr. Reddy's findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC for medium work."). Accordingly, the ALJ did not commit reversible error in her consideration of Dr. Carrol's medical opinion.

2. **Dr. DeLaughter**

Plaintiff further takes issue with how the ALJ weighed the medical opinion of Dr. DeLaughter. Plaintiff was evaluated by Dr. DeLaughter at the SSA's request, and Dr. DeLaughter concluded that plaintiff should be restricted to an eroded range of light exertion work with limitations to sitting, standing, or walking in ten-minute increments and required that plaintiff be allowed to lie down for one hour during an eight-hour workday. Dkt. # 14, at 25, 472. The ALJ gave Dr. DeLaughter's opinion regarding plaintiff's functional limitations "little weight, as the degree of limitation to standing, walking and sitting, as well as the manipulative and postural limitations, are not consistent with Dr. DeLaughter's examination findings, the objective testing and the other examination findings discussed [throughout the ALJ's decision]." Id. at 25.

Plaintiff argues that the ALJ erred by according Dr. DeLaughter's opinion, which included the functional limitations listed above, "little weight," claiming that the ALJ engaged in improper picking and choosing of the record to support a finding of non-disability. Dkt. # 26, at 4 (citing Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008)). But the ALJ did not "pick and choose" from Dr. DeLaughter's report. Rather, the ALJ simply noted that Dr. DeLaughter's conclusion was not supported by his own findings or the rest of the objective medical evidence in the record. For instance, the ALJ recounted Dr. DeLaughter's finding that plaintiff's physical examination revealed that plaintiff had "ambulated with a stable gait, at an appropriate speed, without the use of assistive devices." Dkt. # 14, at 25, 466, 470. The ALJ further noted that Dr. DeLaughter found that plaintiff retained normal manipulative abilities and normal range of motion in her hands. Id. at 25, 466, 469. The ALJ reasonably concluded that Dr. DeLaughter's opinion regarding plaintiff's functional limitations was unsupported by his objective medical findings. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); see also White v. Barnhart, 287 F.3d 903, 907-08 (10th Cir. 2001) ("In short, the record reveals that Dr. Fanning's examinations of Ms. White were limited and did not fully support her very restrictive functional assessment; that her opinion was inconsistent with the findings of the consulting physicians; and that her treatment relationship with Ms. White was relatively brief. This is sufficient to disregard Dr. Fanning's opinion.").

Moreover, the ALJ also discussed other medical evidence inconsistent with Dr. DeLaughter's functional limitations conclusion. For instance, the ALJ noted that the Cooperative Disability Investigation (CDI) report showed that plaintiff "demonstrated having full and normal range of motion of all extremities and joints," and that she "exhibited adequate and normal fine and gross manipulations of both hands along with normal grip strength of the hands." Dkt. # 14,

9

at 23. The CDI also stated that plaintiff's "gait was observed to be normal," that "[s]he was able to climb up and down steps without difficulty," and that she "exhibited the ability to pick up a twelve-pack water bottle package with both arms and hands from the chair and place[d] them on the floor of the garage with ease, and arose back to erect posture with ease as well." Id. Thus, the ALJ reasonably determined that this medical evidence did not support the limitations assessed by Dr. DeLaughter. See Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (holding that ALJ did not err by according treating physician opinion "little weight" because opinion conflicted with other medical evidence). In sum, the ALJ did not have to accept Dr. DeLaughter's conclusion about functional limitations as long as he "provide[d] specific, legitimate reasons for rejecting it," Chapo, 682 F.3d at 1291, which the ALJ did here.

3.  **Dr. Linde**

Plaintiff also argues that the ALJ failed to properly consider the opinion of Susan Linde, who evaluated plaintiff at the request of the SSA on December 1, 2016, and determined that plaintiff's chronic pain[5] and poor sleep may affect her stamina. Dkt. # 14, at 24. The ALJ provided a

---

[5] Plaintiff stated in her opening brief and objection that Dr. Linde diagnosed her with chronic pain syndrome. Dkt. # 17, at 6; Dkt. # 26, at 4. However, this is not true. Dr. Linde noted that plaintiff was experiencing chronic pain, not that she suffered from chronic pain syndrome. Dkt. # 14, at 400. Plaintiff also cites her treating physician for the proposition that she was diagnosed with chronic pain syndrome. Dkt. # 17, at 6. That is also not true. On June 7, 2018, plaintiff's treating physician noted that plaintiff was experiencing chronic pain from her hip replacement surgery, which occurred in 2014, but her doctor did not state that plaintiff suffered from chronic pain syndrome. "About 25% of people with chronic pain will go on to have a condition called chronic pain syndrome (CPS). That's when people have symptoms beyond pain alone, like depression and anxiety, which interfere with their daily lives." Stephanie Watson, What Is Chronic Pain Syndrome?, WebMD, (November 30, 2020), https://www.webmd.com/pain-management/chronic-pain-syndrome-overview; see also Wilson v. Colvin, 213 F. Supp. 3d 478, 487 n.4 (W.D.N.Y. 2016). This distinction is important because the Tenth Circuit has noted that chronic pain syndrome may meet or equal the mental disorder listing for Somatoform Disorders under listing 12.07. Wilson v. Barnhart, 82 F. App'x 204, 210 (10th Cir. 2003). Thus, contrary to plaintiff's assertion, there is no medical evidence in the record that she was ever diagnosed with chronic pain syndrome.

substantial discussion of Dr. Linde's evaluation notes. Dkt. # 14, at 24. The ALJ noted that Dr. Linde explained that the claimant's effort on the Montreal Cognitive Assessment was judged to be suspect and "deviated significantly from her narrative with regard to memory, verbal ability and concentration." Id.

The ALJ further discussed Dr. Linde's assessment that plaintiff cried throughout the evaluation, was socially appropriate and cooperative, made good eye contact, showed normal attention and concentration, did not evidence psychotic thought, was friendly and cooperative, and was likely able to perform some work-related mental activities. The ALJ also noted that Dr. Linde stated that plaintiff "could be expected to have some mild difficulty with concentration, memory, persisting with difficult tasks and adapting to the demands of a work environment." Id. Finally, the ALJ noted that:

> The claimant was believed to be capable of carrying out simple and complex instructions within a work environment, but her sleep problems and chronic pain possibly impacted her stamina. After examination, the claimant was assessed with major depressive disorder – moderate (Exhibit 6F pages 2-9). These findings have been considered and considerable weight is given to the finding that the claimant is able to carry out simple and complex instructions within a work environment. The claimant's stamina is considered in the limitation to only some complex tasks, rather than a full array of complex tasks.

Id.

Consistent with Dr. Linde's opinion, the ALJ limited plaintiff to simple, routine tasks, and some complex tasks. Id. at 21. The ALJ sufficiently explained her reasoning and the evidence on which she relied in the weight she gave to Dr. Linde's opinion. Plaintiff has not identified any significantly probative evidence of chronic pain, or any other symptom or impairment, the ALJ ignored or rejected without explanation. Accordingly, the ALJ properly considered the medical opinion of Dr. Linde.

### B. Step Two

Plaintiff argues the ALJ erred by failing to find her hand, neck, and back pain to be severe impairments and further erred by failing to find her insomnia, fatigue, chronic pain, and PTSD to be medically determinable impairments at step two. To begin with, at her hearing, plaintiff failed to inform the ALJ that her insomnia, fatigue, or PTSD were at issue in this case.[6] "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Wilson v. Astrue, 602 F.3d 1136, 1149 (10th Cir. 2010) (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)). Courts have routinely held that ALJs are not required to address an issue when a claimant fails to raise that issue before them. Wendelin v. Astrue, 366 F. App'x 899, 904 (10th Cir. 2010) ("Because an ALJ is not required 'to exhaust every possible line of inquiry, and this issue was not raised to the ALJ, the ALJ was not required to address it." (internal citations omitted) (quoting Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir.1997))); see also Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir.2008) (denying remand where claimant's counsel "made no effort to point out the existence or relevance

---

[6] At plaintiff's hearing, the ALJ and her attorney had the following colloquy:

> ALJ: Okay. What, what all impairments do you want me to consider?
> ATTY: Okay. Neck, back, she has end-stage arthritis in her left hip as well.
> . . . .
> AJL: Anything else?
> ATTY: Yeah, her hands. She's got arthritis in her hands.
> AJL: Both?
> ATTY: Yes.
> ALJ: Okay.
> ATTY: And that's been documented by Dr. Car[r]oll. And then there's also some – Dr. Delaughter did an RMC that concludes limitations on her hands. So neck, back, both hips, both hands, and the memory issues.

Dkt. # 14, at 35-36.

of [omitted medical evidence] to the ALJ"); Peggy S. C. v. Kijakazi, No. 19-CV-0387-CVE-JFJ, 2021 WL 4148089, at *7 (N.D. Okla. Sept. 13, 2021) (stating that claimants cannot "withhold their second-tier arguments at their hearing, so the ALJ will neglect to discuss an issue the claimant never raised, with the hope of getting a second bit at the apple"). Accordingly, the Court finds no error in the ALJ's failure to address plaintiff's insomnia, fatigue, and PTSD because she did not notify the ALJ that they were at issue in her case.

As for plaintiff's chronic hand, neck, and back pain,[7] pain is a symptom, not an impairment, 20 C.F.R. § 404.1529(b), and "[n]o symptom or combination of symptoms can be the basis for a finding of disability," SSR 96-4p, 1996 WL 374187. The SSA uses a two-step process for evaluating an individual's symptoms. At step one, it "determine[s] whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. If the claimant shows that a physical or mental impairment could reasonably be expected to produce the claimant's alleged symptoms, the SSA, at step two, "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Id. at *4. Plaintiff does not contend that the ALJ failed to properly evaluate her pain symptoms under 20 C.F.R. § 404.1529 and SSR 16-3p. Nevertheless, the Court finds that the ALJ properly evaluated plaintiff's pain and incorporated it into plaintiff's RFC. See Dkt. # 14, at 22-25. Thus, the Court finds that the ALJ committed no error at step two.

---

[7] As discussed above, the Court notes that plaintiff was not diagnosed with chronic pain syndrome, which courts have generally held to be a medically determinable impairment. See, e.g., Terrell v. Berryhill, No. 16-CV-02566-MEH, 2017 WL 1352275, at *9 n.4 (D. Colo. Apr. 13, 2017) ("Chronic pain syndrome has been found to be a medically determinable impairment in other cases in this Circuit." (citing cases)).

13

### C. Step Four

Plaintiff argues that the ALJ failed to fully determine the precise physical and mental demands of her past relevant work. At step four, an ALJ must make specific findings on the record that include the "physical and mental demands of the past job/occupation." SSR 82-62, 1982 WL 31386; see also Winfrey v. Chater, 92 F.3d 1017, 1024 (10th Cir. 1996) (describing the three phases of step four of the sequential analysis). The magistrate judge in her R&R fully explained how the ALJ satisfied this requirement. Dkt. 25, at 21-23. In her objection, plaintiff discusses how the ALJ minimized plaintiff's doctor's statement that "she 'is disabled due to current medical problems' including congestive heart failure, hypertension, GERD, and bilateral foot pain." Dkt. # 26, at 8. However, plaintiff's doctor never said this; heart failure, hypertension, and GERD are not at issue here; and plaintiff cites a page in the administrative transcript that does not exist.[8] Because the Court cannot determine what plaintiff is objecting to, the Court considers this argument waived. 2121 E. 30th St., 73 F.3d at 1060 (objections must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute").

### D. The Medical-Vocational Guidelines

Plaintiff argues that the ALJ, and later the magistrate judge, wrongly determined that the Medical-Vocational Guidelines (grids) did not apply in this case. But as the magistrate judge correctly pointed out, the grids apply only when a claimant cannot perform her past relevant work because of one or more severe impairments. 20 C.F.R. Pt. 404, Subpt. P. App'x 2, § 200.00(a).

---

[8] While the Court is confused by plaintiff's argument, one possible explanation for it is that plaintiff accidentally incorporated an argument from another case into her objection. See, e.g., Deaton v. Colvin, 16-CV-389-KEW, Doc. 18 at 4 (Feb. 3, 2017).

Here, however, as discussed above, the ALJ properly determined at step four that plaintiff can perform her past relevant work, and thus the grids are inapplicable.[9]

**E. Subjective Complaints**

Plaintiff argues that the ALJ improperly dismissed her subjective complaints because the ALJ stated at the hearing that she "ha[s] to base her decision strictly on the medical records." Dkt. # 14, at 58. The ALJ misstated the law when she made this statement to plaintiff. ALJs can, indeed, must, consider more than just a claimant's medical records. See 20 C.F.R. § 404.1529 (SSA must consider claimant's statements about symptoms, including pain); § 404.1527(f) (SSA must consider nonmedical sources). Despite the ALJ's misstatement of law at plaintiff's hearing, the ALJ's decision shows that she considered plaintiff's subjective complaints. For instance, the ALJ discussed at length plaintiff's Adult-Function Report and noted that she considered plaintiff's statements in that report. Dkt. # 14, at 21. The ALJ in her decision also summarized plaintiff's testimony from the hearing and noted that she considered it, along with all of plaintiff's complaints of pain. Id. at 22. Thus, it is clear from the record that the ALJ properly considered plaintiff's subjective complaints despite her misstatement of the law at the hearing. Accordingly, the Court finds no reversible error in the ALJ's misstatement.

---

[9] Plaintiff's real objection does not appear to be aimed at the ALJ's failure to apply the grids, but at the ALJ's failure "to perform a proper evaluation at Step Two . . . and to properly weight and account for the medical evidence." Dkt. # 26, at 9. In plaintiff's view, a proper evaluation of the evidence at step two would have shown that plaintiff cannot perform her past relevant work. Thus, plaintiff concludes, the grids should be applied at step five, and plaintiff should be found disabled. But the Court has already addressed plaintiff's step two complaint above and found that the ALJ did not commit reversible error at step two, and plaintiff's reframing of her argument as a failure to apply the grids does not change the Court's finding.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 25) is **accepted**, and the Commissioner's decision denying benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 30th day of September, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE